(No. 4992—

Esther Hargrave and Charles E. Hargrave, Claimants, vs. State of Illinois, Respondent.

*Opinion filed May 12, 1964.*

William D. Hanagan and Wham and Wham, Attorneys for Claimants.

William G. Clark, Attorney General; Lawrence W. Reisch, Jr., Assistant Attorney General for Respondent.

Perlin, C. J.

Claimants, Charles E. Hargrave and Esther Hargrave, seek the sums of $500.00 and $25,000.00, respectively, for damages arising out of a collision on February 25, 1961 between an automobile driven and owned by Charles E. Hargrave, in which Esther Hargrave was riding as a passenger, and a truck owned and operated by the State of Illinois.

Claimant Charles E. Hargrave testified as follows:

At approximately 6:20 A.M. on the above mentioned date, claimant was driving his 1954 Buick Sedan in a southwesterly direction on State Route No. 148 south of Mt. Vernon, Illinois, en route to Cobden, Illinois. His mother, Esther Hargrave, was riding with him as a passenger in the front seat of the automobile. The purpose of the trip was to transport Mrs. Hargrave to a doctor's appointment in Cobden, Illinois.

Route No. 148 was a two-lane highway. There was ice and snow in spots on the road. When claimants reached a point just south of Mason Road, a State of Illinois Highway truck, with a snowplow attached, was cleaning the highway, traveling south toward Waltonville on Route No. 148. Hargrave made several attempts to pass the truck, honked his horn and flashed his lights, but could not get around it, because claimant alleges the truck was not completely on its own side of the road. After the third attempt to pass the truck, Hargrave dropped back approximately 175 feet behind the truck waiting a chance to pass. As he followed the truck, he observed that the snowplow blade was scraping ice and snow off the highway; debris was flying from the blade, and it was making a rumbling noise. Both he and the truck were allegedly driving at 40 miles per hour. As he continued to follow the truck at this speed, the truck came to a sudden stop, and Hargrave's car slid into the back end of the truck. As a result of the collision, Esther Hargrave was injured, and the Hargrave car was damaged. It was learned after the collision that the snowplow had fallen off the truck.

The driver of the truck, Virgil Bushong, testified that he saw claimant's headlights in the rear view mirror for approximately a mile before the accident, but did not observe him attempting to pass. He stated that the truck

headlights, blinker light on top of the cab, cab lights, and three cluster lights in the back of the cab were lighted, and no portion of the truck or equipment had crossed the center line in the opposite lane of traffic. He estimated that he was going 18 or 20 miles per hour at the time, but did not know his exact speed, since his speedometer was broken. This was the first time he had operated the truck and the plow together. Bushong further testified that after the collision the pin that holds the framework of the snowplow was sticking over the center line of the road approximately 4 inches. He had never inspected the framework before this collision. He did not know what had happened except that the truck came to a sudden stop, and the snowplow probably became disconnected before the impact.

Donald Peterson, section foreman, was a passenger in the State truck at the time of the collision. He testified that the truck came to a sudden stop on the pavement, and ran up over the frame of the snowplow before it came to a stop. The center bolt that fits the frame of the plow to the truck was missing, and he looked for the bolt, but could not find it after the accident. The snowplow frame, which is located underneath the truck, was in place when the truck was received that morning. He also guessed the speed at 18 to 20 miles per hour, and said that they had been told by the State Engineer never to exceed that speed. He did not notice anyone trying to pass the truck.

Respondent submitted some evidence by way of the Departmental Report and testimony by Donald Raney, Maintenance Field Engineer for the State of Illinois, that the truck in question had been inspected in October, 1960. However, it is indicated that the frame holding the snowplow is not installed until after inspection of the truck.

Raney testified that the center bolt is one of the items that the operator should check "just like oil", but that no instructions for checking it are prescribed. The truck involved was a utility truck, and the maintenance department installs the snowplow frames. In such trucks, Raney stated, no specific individual is charged with the duty of installation.

Claimants allege that respondent was negligent in its duty to exercise reasonable care in the operation and maintenance of its vehicles. They argue (1) that the truck came to a stop on the road, and the snowplow frame came off, because of the improper operation of the truck and snowplow; or, (2) that something was wrong with the snowplow frame, which caused it to come off.

In support of their first contention of improper operation, claimants argue that the truck was proceeding at a speed of 40 miles per hour in violation of instructions not to exceed 18 to 20 miles per hour when using the snowplow. Testimony by respondent's witnesses that they were within the 18 to 20 miles per hour limitation must be discounted, claimants argue, since both witnesses testified that this was a guess only, as their speedometer was broken. Claimants further contend that the added stress to the snowplow frame caused by the higher speed could have caused the frame or bolts to give way, thus causing the truck to suddenly stop. Claimants point out that there is no evidence that the snowplow or snowplow frame was properly installed, or that respondent's agents inspected the frame and its parts after it was installed on the vehicle.

The parties have stipulated that "at the time of the occurrence the vehicle was under the control of the State on State business, and at the time of the accident the State had the exclusive possession and control of the truck, snowplow and its component parts, and that at the

time of the occurrence respondent was in the exclusive control of the operation of the equipment through an employee.''

Claimants allege that the doctrine of res ipsa loquitur should be applied in the instant case. This doctrine holds that, when an injury is caused by an instrumentality under the exclusive control of the party charged with negligence, and is such as would not ordinarily happen if the party having control of the instrumentality had used proper care, an inference or presumption of negligence arises. The burden then rests upon respondent to rebut the presumption of negligence arising from the facts of the case.

Respondent claims that this was an ''unavoidable accident.'' It is the opinion of the Court that the doctrine of res ipsa loquitur is properly applied in the case at hand, since, if proper care had been used, a snowplow frame does not ordinarly fall off a truck causing the truck to come to a sudden stop. Respondent did not rebut the presumption of negligence, which arises upon such a happening. Respondent did not prove that proper care was applied in installing, inspecting or operating the truck with the snowplow. In fact, a broken speedometer prevented an assured maintenance of the speed recommended by the authorities in charge. We conclude that the State was negligent in the maintenance and operation of this vehicle.

To recover in this action, claimants must prove by a preponderance of the evidence that not only was respondent negligent, but that claimants were free from contributory negligence. (Ill. Rev. Stats., Chap. 95½, Sec. 158, provides that the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent.)

Claimant Charles E. Hargrave was well aware of the presence of the State vehicle, having followed it for several miles. Evidence shows that the truck was well-lighted, with a blinker light on top of the cab, and cluster lights in the rear. It was established that snow had been falling, although it had stopped by the time of the collision, and that there was scattered ice and snow on the highway. Claimant testified that he was approximately 175 feet behind the truck, traveling at 40 miles per hour when the truck stopped.

According to the "Driver's Manual", prepared by the U.S. Treasury Department, a car with excellent brakes traveling at 40 miles per hour will require for stopping a distance of 128 feet on dry pavement, 171 feet on wet pavement, or 311 feet on ice or packed snow. In view of the hazardous condition of the highway, it is our opinion that claimant did not clearly prove that he exercised due care for his own safety. Therefore, the claim of Charles E. Hargrave for recovery for property damage to his car is hereby denied.

Respondent argues that any contributory negligence of Claimant Charles E. Hargrave should be imputed to Esther Hargrave, since the sole purpose of the trip was to take her to the doctor's office. Esther Hargrave did not pay for any part of the trip, and there is no evidence that this was a joint enterprise in which the negligence of the driver of the vehicle is imputed to a passenger. Neither is there any evidence that Esther Hargrave was herself contributorily negligent merely because she did not warn her son about the distance between the automobile and the truck.

As a result of the accident, Mrs. Hargrave was confined to the hospital from February 25 until March 11, 1961, with, among other injuries, a fracture of the right patella, and contusions and abrasions to the forehead.

Her forehead was healed at the time of the hearing, but is sunken at the point of laceration. Dr. Charles Wells testified that he performed an operation on the fractured patella, and that there was soft tissue injury in and around the knee in addition to the bone injury. He stated that the injury is at times painful, and is apparently permanent. She has difficulty in maneuvering stairs, and must use her left leg first. He stated that whirlpool baths given to Mrs. Hargrave is in accord with standard practice in this type of injury.

Dr. Edward Stephens, who examined Mrs. Hargrave, testified that a complete loss of flexion and extension of the leg is expected with a reasonable degree of medical certainty. He would recommend a fusion operation for the purpose of relieving the pain.

Mrs. Hargrave testified that before the accident she was able to do all of her housework, and as a result of her injuries it was necessary to hire temporary household help. She further testified that she runs a power sewing machine in her work, and had earned $1.52 per hour, but now earns, on the average, $1.48. At the time of the accident her average pay was $53.20 per week, and she missed sixteen weeks of work. She complains of pain in both her legs. She does most of her housework, but cannot get down on her knees to scrub floors, and the like, as she did before the accident.

Mrs. Hargrave stated that she received $500.00 from the company, which insured her son's car, based on the medical pay clause of his policy.

According to claimant's bill of particulars and the evidence presented, Mrs. Hargrave has incurred $1,764.55 in actual damages. She has apparently suffered a degree of disfigurement and a partial loss of normal use of her right leg as a result of the accident. (Her earnings from

her work, however, do not appear to be demonstrably affected.)

The Court hereby awards Claimant Esther Hargrave the sum of $6,500.00.